Good morning, Your Honors. Good morning. Hold on one second for our opposing counsel to take her seat. You are Ms. Khan-Avila, is that correct? Yes, Your Honor. Very well. Please proceed. Good morning, Your Honors, and if it may please the Court. Maliha Khan-Avila, appearing for the petitioner, Mr. Julian Gutierrez. Your Honors, I would like to bring to the Court's attention two critical issues that require our discussion this morning. First, is that Mr. Gutierrez's 2011 conviction under California Penal Code 245A1 should not be retroactively held as a crime involving moral turpitude because when Mr. Gutierrez entered his plea and was convicted, the applicable and controlling precedent of this Court supported a finding that his conviction was not a CIMT. Actually, wasn't our Court somewhat ambivalent on whether it was a crime involving moral turpitude at that point, and did not we then send it back to the BIA regarding matter of woe? Well, Your Honor, when Mr. Gutierrez pled guilty, he pled guilty in 2011, and in 2011, the case law as it stood was, the precedential case law was CAR, C-A-R, and that case held that a conviction under 245A2, which was a more serious offense of an assault involving a firearm, was not a crime involving moral turpitude. So when he pled guilty in 2011, the case law as it stood for the last 15 years, a decade and a half, was that his conviction was not a crime involving moral turpitude. But that's not how we characterized it. I mean, just a couple of years later then in Ceron, we said, we have found no decision by us or the BIA that has analyzed whether Section 245A1 categorically defines a crime involving moral turpitude. And we said CAR, and then Barber, the earlier case that was sort of suggestive in the opposite direction, we said neither of those categorically answered the question. So given, how do you reconcile your reading of CAR with what we've already said about the import of that decision? Yes, Your Honor. Well, CAR held that a violation of California Penal Code 245A2, a more serious offense with assault with a firearm, was not a crime involving moral turpitude. Now, the difference between 245A2 and 245A1, which is a lesser crime, I guess you could say, because 245A2 involves a firearm, whereas 245A1 doesn't. So if the crime which involves a firearm, which seems to be more dangerous, is not considered a CIMT, then I think it's fair to say that when Mr. Gutierrez pled guilty, he was under a reasonable presumption that 245A1 would not be considered a crime involving moral turpitude. And so he was acting under that presumption when he took his plea agreement. And it had been the established case law for 15 years prior to his conviction. And so when we – it has long been established that legislation does not apply retroactively, absent a clear indication that Congress intended to make the statute retroactive. But why wouldn't he have been worried about BAR then? CAR, Your Honor? Sorry, I thought it was – the earlier, like, 1950-whatever case. Oh, Barber. Barber. Sorry, sorry, Barber. Yes, thank you. Barber, Your Honor, was a case decided in 1954. And that case only minimally analyzed – minimally analyzed this court. In Barber, the court stated, without meaningful analysis, in 1953, that assault with a deadly weapon involves moral turpitude. It was an outdated analysis applied to a no longer applicable definition of moral turpitude that was established in the 19 – by the time that he took his plea agreement. It was not the – it no longer had an applicable definition of moral turpitude. The law changed in 1996, whereas the law that Mr. Gutierrez relied on, that law supported – But our court in Ceron doesn't seem to think that this matters, this difference in the moral turpitude definition, right? Ceron or Ceron, we thought there was a tension. So aren't we bound by Ceron saying that there's the tension? How can we say there wasn't really a tension? Ceron then went on in 2014, which was three years later, to say that 245A1 is a crime involving moral turpitude. But the law as it stood, when we look at the factors, one of the factors is that whether the new rule represents an abrupt departure from the well-established practice. But isn't – with respect, isn't that your problem? As both my colleagues have pointed out, in Ceron we indicated that our law was ambivalent about whether this constituted – this section constituted a crime against moral turpitude, and we concluded that it was. So your client at the time of his plea could not say the law was X. It was ambivalent, and we clarified that in Ceron. And as my colleagues have pointed out, we're bound by the court. As a matter of fact, I think it was a non-bound court, so we're especially bound by that. How do we get around that? Aren't you bound as well by the fact that when your client was – pled that what our law was about whether the section 245A1 was a crime involving moral turpitude was not clear? But, Your Honor, I would argue that because 245A2 had already been decided by Carr, which was the more serious offense. But Carr was overruled, as was Barber, by our court, and they indicated that the cases were inconsistent. Our law was not clear. So you can't really rely on either one of them as definitively deciding what the law was, right? Isn't that what Ceron said? But the issue is what did Mr. Gutierrez rely on when he pled guilty? And the only real applicable definitive law out there was Carr for him. Creon came after. And when we look at the Garfias argument— Right, but I think what you're arguing is that Ceron was wrong, right? To agree with you, wouldn't we have to say that Ceron was wrong about how someone in your client's position would have understood the law? I would agree with that as well. And I think that the reasoning for that is because of the factors that have to be taken into consideration when applying a law retroactively. And the factors that are laid out are in support of Mr. Gutierrez because the third factor, which the extent to which Mr. Gutierrez relied on Carr, also favors in his opinion because the reliance is highly fact-dependent and conducted on a case-by-case basis. The Supreme Court has indicated as a general matter that defendants, considering whether to enter into plea agreements, are actually aware of the immigration consequences of their convictions, St. Cyr 533 U.S. And that they're relying—and Afendor-Reyes 11-4-985 holds that there is a rebuttable presumption that a non-citizen knew about and relied on the existing law when he pled guilty. And we would argue that that's what Mr. Gutierrez was relying on. And in applying the fourth and fifth factors, Your Honours, in regards to Mataravu significantly burdens Mr. Gutierrez because it would make his 2011 conviction a CIMT, which carries unfavorable immigration consequences. But you're saying that even if your client had a completely erroneous view of the law, that because he had that view that that binds the court? Is that what you're saying? Our argument is that he did not have an erroneous view of the law, though, Your Honour. Ceron says he did. Ceron says he did. So just arguendo, you seem to be saying your client understood it was X, and that's all that counts, is that he thought it was X, even though it might have been Y or Q. And we're bound by X, according to you. Is that right? I would not argue that just because he erroneously thought that that was the law, that that's the reason why the court should not retroactively apply his conviction. I think that there are other reasons, and I think the other reasons are that the law at the time that he pled guilty in Carr did make his plea a safe plea, and that the Garfias factors, also known as the Montgomery Ward factors, support that decision that this should not be retroactively applied in his case. Could you address our decision in Fernandez? I mean, it's unpublished, so it's obviously not binding on us, but if we were inclined to regard it as persuasive, why shouldn't we follow it? Fernandez shed different facts. Fernandez is an unpublished decision, and the facts in Fernandez show that he pled guilty in 1998 to his conviction. And Carr was decided in 1996, so there had been about two years since the law had been established. And I would argue that in this case, it's been 15 years since the law has changed, so that the reliance on Carr was well-founded by Mr. Gutierrez. Your Honor, I would like to just briefly address the second issue, which was the denial of the motion for an evidentiary hearing in regards to the matter of Quilin-Thon for the respondent, and briefly, I just wanted to shed light that the judge made a factual error in that determination, because this case had four judges on the matter. One on the non-detained docket, three on the—I mean, one on the detained docket, and three on the non-detained docket. The first judge— Counsel, did your client move for a continuation in November of 2018? No, but—well, he asked for the court to consider whether the petitioner had a lawful entry. He already made that argument back in 2014 in front of the first judge, and the judge in 2014 actually granted that request and set the matter over for an evidentiary hearing on this matter. So the first judge— So I was trying to figure out what happened with that. Did that evidentiary hearing ever happen? No, that evidentiary hearing never happened because it was set for February 12, 2015, and it never happened because the counsel was sick. The case is off the docket for four years. It comes back, the next judge says nothing about Quilin-Thon. But so why doesn't the counsel then say, look, I was sick last time. We still need to have our hearing. There was an issue that the petitioner had gotten divorced and was in the process of remarrying. So by the time he goes to the next hearing in November of 2018 in front of the final judge, he is now married and eligible, and the Quilin-Thon question is brought back up. What happens is there's a factual inconsistency between the final judge on the non-detained docket and the first judge on the non-detained docket. There's a factual inconsistency with the last judge's rules that it's never been brought up before, that he's already conceded removability, and that there's no reason for a Quilin-Thon. However, had she reviewed the record of proceedings, she would have seen that the first judge had actually set it for an evidentiary hearing, meaning the finding had been established that he could have an evidentiary hearing. So her simply saying that this is already in the record, that he had made concessions to his removability, is inaccurate. The first judge had already allowed him to have an evidentiary hearing. Why wasn't it counsel's obligation or your client's obligation at that point to say at the more recent hearing, wait a second, we were supposed to have an evidentiary hearing, or we still want the evidentiary hearing, or we'd like to bring that up again. We need more time. Something to indicate that the new judge didn't know this thing about the old judge. The burden is on both parties, though. The burden is on the immigration judge as well. Due process should not be dependent on pushing cases through the system because of a backlog of how fast and under the pressure under which the final judge was probably processing the cases. She wanted to push the case through. Perhaps the judge didn't have time to look at the matter and actually review the record and see that an evidentiary hearing was set. There's a clear indication that the immigration judge and the client hearing… Counsel, what case or regulation would you cite that says it's the burden of the immigration judge in a case like this to bring up the fact that the earlier evidentiary hearing did not occur? I believe under HCFR 1240, Your Honor, that the immigration judge in general has the duty to review the prior proceedings in the matter when they take over a case. It's not the petitioner's fault that he had four different judges and the judges didn't review the record. I'd like to reserve… You want to reserve balance of your time? Thank you. Of course. Very well. Let's hear from the government. Good morning. May it please the Court, my name is Katie Lees, appearing on behalf of the Attorney General. The petition for review should be denied in this case. The Board correctly determined that Mr. Gutierrez was convicted of a crime involving moral turpitude for his conviction under California Penal Code Section 245A1, which barred him from cancellation of removal. In doing so, the Board appropriately applied matter of lieu to his case. Although Mr. Gutierrez argues that the Board could not apply matter of lieu retroactively, this argument fails when utilizing the five-factor test in Montgomery Ward. Three of the five Montgomery Ward factors favor retroactive application in this case, and thus the Board appropriately applied matter of lieu to Mr. Gutierrez's conviction and found him to be convicted of a crime involving moral turpitude. Additionally, the Court should deny the petition for review regarding petitioner's assertions that the Board violated his due process rights. Mr. Gutierrez was given ample time and a full and fair opportunity to present his claim for adjustment of status and that he entered the United States with procedural regularity, but he did not do so. Therefore, there was no due process violation. Can we just pick up on that? So opposing counsel cited a regulation that I don't have in front of me about the IJ needing to review the record when they take over a case. Can you respond to whether that created an obligation here to have that evidentiary hearing? So it is true that the immigration judges have a duty when they take over the case new to look over the record previously as to what has occurred. Respectfully, Your Honor, opposing counsel's description of what happened in the case is incorrect. The immigration never said that you have never brought up Key Lawton before in that case. This is on the administrative record on page 143. She said there's no Key Lawton here. You admitted to entering without inspection and then you signed and agreed on your application for cancellation of removal that you entered without inspection and therefore were moving on to the merits of the cancellation removal case. And petitioner's counsel never said anything about that. He just responded very well and they moved on to cancellation removal. And it was actually set for another merits hearing after that for cancellation of removal. Was that same contradiction present when the earlier judge thought there should be an evidentiary hearing? So, no. The earlier judge said that they were going to set it over for a matter of Key Lawton for an evidentiary hearing. Counsel's right in that counsel was sick and then it was set over again. But at the next hearing, he was no longer eligible for adjustment of status because he divorced his United States citizen wife. He said he was engaged to another United States citizen. They were planning on getting married. But because he was no longer eligible, that evidentiary hearing didn't take place any longer. But what I'm asking is, it seems like the most recent judge said, we're not going to entertain this idea that you were waived in because you said otherwise in a different document. Did that other document exist at the time that the first judge had ordered the evidentiary hearing? I'll have to look at when he filed cancellation of removal, if it was before or after. Key Lawton and I can follow up with briefing on that. I'm not sure exactly of the timeline of when he actually filed for cancellation removal. But the admission by counsel did occur before the request for a Key Lawton evidentiary hearing. But in order to withdraw an admission made by counsel, there are certain factors that have to be met. And the petitioner's counsel did not even request to withdraw that admission. He didn't say, we would like to withdraw our concession that he entered without inspection. He just asked for a matter of Key Lawton evidentiary hearing. That didn't occur. And then he was no longer eligible for adjustment of status. Because of adjustment of status, he had to have an approved relationship with a United States citizen. And he also had to have entered with inspection. So he had to have both of those factors. And he was no longer married to a United States citizen. So he was no longer eligible. So is it your position then that he, in fact, did review the prior record and that was evident in the decisions that were made at that time? Is that correct? Yes, Your Honor. If there's no further questions, I'll go to the Montgomery Ward factors. Can I just ask you at the outset of that? We had, obviously, this is also an issue in Zambrano, Moscow, which was set for today. Is the government aware of whether this is a frequently recurring issue? Are there a lot of cases involving the retroactivity of Wu? I'm not sure exactly how many petitions review involve this matter. I know that Fernandez, obviously, came before this court. And then those two cases that were set for today. I'm not aware of any other petitions for review with this court that involve this issue. So I only know of these two, honestly. So three out of the five factors favor the government in this case. The first Montgomery Ward factor, whether the case is one of first impression, favors neither the petitioner or the government in this case. However, it should be noted this is not a case of first impression, as the court has said that they have gone through the factors exhaustively in Fernandez and found that there is no issue in applying Matter of Wu retroactively here. The second and third factors are intertwined. The second factor is whether Matter of Wu represents an abrupt departure of law. As this court pointed out earlier, this was at best unsettled at the point when petitioner pled guilty. And therefore, there was no reliance on any settled matter of law here. There's conflicting decisions. Neither one, as Saron said, were bound or were constructed in law that applies now. And so the slate was wiped clean and sent back to the board to determine whether this was a crime involving moral turpitude. The third factor is whether the petitioner could have reasonably relied on any set precedent. Given the unsettled nature of the law, it was not reasonable for him to rely on either Carr or Barber in this case. Neither stood merit when he pled guilty, and therefore there was no reliance here on any set precedential decision that he could have relied on. The fourth factor does weigh in petitioner's favor because he was barred from cancellation of removal. But the fifth factor also favors the government, the statutory interest in applying the new rule. This court, as you've said, in Saron and Safarian and Fernandez and unpublished cases, has said that there's no—well, in Safarian and Fernandez specifically, there's no issue of retroactivity, and therefore to go against that would undermine the uniform application of law in this case. Therefore, because three of the five Montgomery Ward factors favor retroactive application of matter of will to Mr. Gutierrez's case, the board correctly found that he was convicted of a crime involving moral turpitude. What's your understanding? I mean, you say because three of the five factors, is it numerical? I mean, do we weigh them against each other in some way, and if so, how? Or do we just look at, like, majority, whichever side has three or four or five factors is the one that wins? What do we do with them? It's my understanding that they're all equal factors, and then you weigh them against each other to determine who has the most in order to apply retro application. So that's what the court did in Fernandez. You went through each factor one by one and then determined that because three of the five factors favored the government, retroactive application was appropriate in that case, and that is what we're asking for similarly here. And is there any discretion in that? Like if one factor seems more clearly matter something, or is it always numerical? I guess I'm just repeating the question, but do we have any case that discusses whether it's just numerical? You know, I'm not aware of any cases that discuss discretion in weighing a factor heavier than others. There's no indication in the case law that one was stronger than any other factor. It always seemed to be a numerical three out of five, two out of five sort of situation. We've held, I mean, number one, Garafias Rodriguez suggests doesn't really apply in the immigration context. Is that your understanding? Yes. So do we just not, I mean, if that one just doesn't apply, then we really only have four factors in an immigration case. Correct. And I mean, this is maybe we're getting a little far removed from what we actually have, but what happens if it's a tie? You know, I'm not sure. I have not seen that happen in a case, and I guess the court would have to address that in a decision if it was tied. I would say that I believe that the uniform application of law and not going against its prior precedent would weigh strongly in this court's interest. But there's no case that I know of in which it was tied. It's always been a lien in one way or the other. If there's no further questions, I would ask this court to deny the petition for review, both because there is no due process violation here and because the Montgomery Award factors favor retroactivity in this case. Any further questions about my colleague? Thank you. Thank you very much. All right, Counsel Ms. Khan-Avila, you have a little bit of time left. Not much, but some. All right. Thank you, Your Honors. It gives me enough time to at least address what we were just discussing in regards to the factors and how they weigh. In Affendor-Reyes v. Garland, 11 F. 4th, 985, a 2021 case, in determining whether a new rule has an impermissible retroactive effect, this court decided that it must engage in a balancing test and weigh all factors together. With the second and third factors closely intertwined and no one factor being dispositive. And that case is citing Garcias-Rodriguez 702 F. 3rd at 523. So I don't think it's a more factors than not situation. What was the citation and what's the name of that case again, please? Yes, Affendor-Reyes v. Garland, 11 F. 4th, 985. And the particular site I'm citing to is at 997. And they are citing Garcias-Rodriguez that the court must engage in a balancing test and weigh all the factors and not one factor is dispositive. It doesn't exactly say whether we count, though, if 3 to 2 always leads to the outcome that the 3 wins. That's correct, Your Honor. And so I think that it's a totality of the circumstances. It's a case-by-case basis. And I don't think Fernandez v. Barr, the unpublished decision, did a thorough enough analysis. Also, Affendor v. Garland actually was a case about 314, which was not retroactively applied to that particular petitioner despite previous published case law, which did rule that 314 could be applied retroactively, California Penal Code 314. And so in that particular case, the Reyes case that I cited, this court determined that a previous Ninth Circuit published decision on the same thing could, because the facts were different on this matter, could not be retroactively applied. So the court is not bound, has to do a case-by-case factual analysis, and that just never happened in this case. Thank you, Your Honors. Other questions by my colleague? All right. Thanks to both counsel for your helpful argument in this case. The case just argued is submitted.
judges: SMITH, FRIEDLAND, MILLER